# No. 25-30213

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Amanda Carter, Individually and real party in interest G.C.; Michael Carter,

Plaintiffs - Appellees

v.

Chad Dupuy, Individually; Jason Ard, Sheriff, in his official capacity as the public entity responsible for LPSO,

Defendants - Appellants

---

### On Appeal from
United States District Court for the Middle District of Louisiana

3:23-CV-69

---

## BRIEF OF APPELLANT JASON ARD AND CHAD DUPUY

---

SUBMITTED BY:

Druit George Gremillion, Jr.
Livingston Parish Sheriff's Office
20300 Government Boulevard
Livingston, LA 70754

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons are

entities as described in the fourth sentence of 5th Cɪʀ Rule 28.2.1 and have an interest

in the outcome of this case. These representations are made in order that the judges

of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Amanda Carter | Andrew Bizer of Bizer & DeReus, L.L.C. New Orleans, LA |
| Michael Carter | Andrew Bizer of Bizer & DeReus, L.L.C. New Orleans, LA |


| Appellants: | Counsel for Appellants: |
|---|---|
| Jason Ard | Druit Gremillion of Livingston Parish Sheriff's Office Livingston, LA |
| Chad Dupuy | Druit Gremillion of Livingston Parish Sheriff's Office Livingston, LA |


| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Intact Insurance Company | None |
| | |
| | |

*S/Druit George Gremillion, Jr.*
Attorney of record for Jason Ard and
Chad Dupuy

ii

# STATEMENT REGARDING ORAL ARGUMENT

Defendants–Appellants, Jason Ard and Chad Dupuy, respectfully request oral argument in this matter as they believe such argument will assist the Court in determining the issues presented in this matter. More specifically, Defendants–Appellants urge that the trial court erred by misapplying the qualified immunity standard and counsel for Defendants–Appellants welcome the opportunity to answer questions by this Court regarding the reasons why summary judgment in their favor is appropriate.

# TABLE OF CONTENTS

Contents                                                                          Page(s)

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS ........................................................................................iv

TABLE OF AUTHORITIES...................................................................................1

JURISDICTIONAL STATEMENT ........................................................................4

STATEMENT OF THE ISSUES ............................................................................5

STATEMENT OF THE CASE ................................................................................6

SUMMARY OF THE ARGUMENT .....................................................................12

ARGUMENT ........................................................................................................18

CONCLUSION .....................................................................................................48

CERTIFICATE OF SERVICE...............................................................................50

CERTIFICATE OF COMPLIANCE .....................................................................51

# TABLE OF AUTHORITIES

**Pages(s)**

**Rules and Statutes**

Rule 56(a) ............................................................................ 4, 10, 18-19

28 U.S.C. § 1291 ................................................................................4

28 U.S.C. § 1331 ................................................................................4

42 U.S.C. § 1983 .........................................................................4, 10, 26


**Federal Court Cases**

*Ashcroft v. alKidd*, 563 U.S. 731 (2011)....................................23-25, 34, 42

*Atteberry v. Nocona General Hosp.*, 430 F.3d 245 (5th Cir. 2005)............26

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................18

*Anselmi v. Penrod Drilling Corp.*, 813 F.Supp. 436 (E.D. La. 1993).........19

*Arizmendi v. Gabbert*, 919 F.3d 891 (5th Cir. 2019) ..................................35

*Carey v. Brown*, 447 U.S. 455 (1980)....................................................32-33

*Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273 (5th Cir. 2003) ...................33

*Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019)............................................24

*Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016) .........................................30

*Davidson v. Fairchild Controls Corp.,* 882 F.3d 180 (5th Cir. 2018).........18

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009)...............................38-40

*Flores v. City of Palacios*, 381 F.3d 391 (5th Cit. 2004)............................43

*Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007)....................................21, 34

*Glenn v. City of Taylor*, 242 F.3d 307 (5th Cir. 2001) ...............................44

*Goss v. Lopez*, 419 U.S. 565 (1975) ...........................................................33

*Graham v. Conner*, 490 U.S. 386 (1989) ........................... 22-23, 26-27, 37

*Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017) ...............................38, 40-42

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982).................................................21

*Houston–Hines v. Houston Indep. Sch. Dist.*,
No. 04–3539, 2006 WL 870459, *5 (S.D. Tex. April 5, 2006) ............44-45

*Ikerd v. Blair*, 101 F.3d 430 (5th Cir. 1996) ...............................................43

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)............................19

*Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999) .....................................32

*Lytle v. Bextar County, Tx.*, 560 F.3d 404 (5th Cir. 2009)...................21, 22

*Manis v. Lawson*, 585 F.3d 839 (5th Cir. 2009) .........................................26

*McKay v. LaCroix*, 117 F.4th 741 (5th Cir. 2024) ......................................45

*Michalik v. Hermann*, 422 F.3d 252 (5th Cir. 2005)..................................20

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .....................................................4

*Morin v. Caire,* 77 F.3d 116, 119 (5th Cir. 1996) .............................4, 45-46

*Nat'l Ass'n of Gov't Emp. v. City Pub. Serv. Bd. of San Antonio, Tex.*,
40 F.3d 698 (5th Cir. 1994) .................................................................18, 19

*Sam v. Richard*, 887 F.3d 710 (5th Cir. 2018) ...........................................44

*Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986).............19

*Saucier v. Katz*, 533 U.S. 194 (2001) ....................................................20-21

*Tolan v. Cotton*, 713 F.3d 299 (5th Cir. 2013) ............................................24

*Wagner v. Bay City, Texas*, 227 F.3d 316 (5th Cir. 2000) ...........................24

*Wheeler v. Miller*, 168 F.3d 241 (5th Cir. 1999).........................................19

*Williams v. Bramer*, 80 F.3d 699 (5th Cir. 1999)........................................43

*Winston v. City of Shreveport*, No. CIV. A. 08-111,
2009 WL 3584486, at *6 (W.D. La. Oct. 28, 2009) ....................................44

## State Court Cases

*Bulot v. Intracoastal Tubular Services, Inc.*,
98-2105 (La. App. 4th Cir. 2/24/99), 730 So.2d 1012................................46

*Caudle v. Betts*, 512 So.2d 389 (La. 1987)..................................................46

*Courville on Behalf of Vincent v. City of Lake Charles*,
98-73 (La. App. 3 Cir. 10/28/98), 720 So. 2d 789......................................48

*Landry v. Bellanger*, 2002-1443 (La. 5/20/03), 851 So.2d 943 .................46

*Morgan v. Richard*, 2019-835 (La. App. 3 Cir. 10/28/20),
305 So. 3d 932............................................................................................48

*Penn v. St. Tammany Parish Sheriff's Office*,
2002-0893 (La. App. 1 Cir. 4/2/03), 843 So. 2d 1157................................47

*Robertson v. Hessler*, 2008-1212 (La. App. 4 Cir. 6/3/09),
13 So. 3d 1214............................................................................................47

*Ross v. Sheriff of Lafourche Parish*, 479 So.2d 506
(La. App. 1st Cir. 1985).............................................................................47

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over the claims brought by plaintiff under 42 U.S.C. § 1983 pursuant to the provisions of 28 U.S.C. § 1331.

Defendants-appellants seek review of the district court's denial, in part, of a Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56, which was based on an invocation of qualified immunity by defendants-appellants. This Honorable Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as the denial of a motion for summary judgment predicated on a defense of qualified immunity is a collateral order capable of immediate review. *Mitchell v. Forsyth*, 472 U.S. 511 (1985). Defendants-appellants are additionally requesting that the Court exercise its discretion to consider under pendant appellate jurisdiction the pending state law claims that are closely related to the federal law claims. *See Morin v. Caire,* 77 F.3d 116, 119 (5th Cir. 1996).

This appeal was also taken timely. Fed. R. App. P. 4(a)(1) requires that notices of appeal be filed within thirty days of the entry of the judgment or order appeal from the district court. Here, defendants-appellants appeal the Order denying their Motion for Summary Judgment, which was entered on March 25, 2025.[1] Defendants-appellants filed their Notice of Appeal on April 8, 2025.[2] Accordingly,

---

[1] ROA.561.
[2] ROA.598.

pursuant to Fed. R. App. P. 4(a)(1), this appeal is timely as it was taken within 30 days of the district court's entry of the Order appealed from.

## STATEMENT OF THE ISSUES

1. In order to prevail on a claim of excessive force under 42 U.S.C. § 1983 and state law, plaintiffs must prove that the use of force by School Resource Officer Chad Dupuy was clearly and objectively excessive. Deputy Dupuy was met in the school office by a parent whom (1) the state Department of Children and Family Services had instructed should not be permitted to have her child due to an investigation; (2) who is cursing at school officials to release her child, (3) who, at least twice has been asked to exit the office, (4) school officials asked Deputy Dupuy to remove her from the office, and (5) who had "planted her feet" and braced herself. Was Deputy Dupuy's actions in grabbing the parent's sleeve/arm and pulling her out of the office clearly and objectively excessive?

2. In order to overcome Deputy Dupuy's invocation of qualified immunity, plaintiffs must prove that the constitutional question at issue has been settled "beyond debate". Neither plaintiffs-appellees nor the district court cited any case law which demonstrates that the use of force described above is clearly and objectively excessive. Did plaintiffs-appellees sufficiently carry their burden of overcoming Deputy Dupuy's invocation of qualified immunity?

# STATEMENT OF THE CASE

On February 4, 2022, an agent with the Louisiana Department of Children and Family Services ("DCFS") came to the residence of plaintiffs, Amanda and Michael Carter, to investigate claims of child abuse involving their daughter.[3] In response to the agents request to speak with them about a report of something that had occurred at the child's school, the Carters told that agent, "I don't know what to say to you, ma'am," and left their residence to go to their daughter's school to retrieve her.[4]

That same date, a DCFS agent contacted Live Oak High School (where plaintiffs' daughter attended school) and informed them that plaintiff and her husband were coming to the school to pick up their daughter.[5] They were instructed by the DCFS agent that under no circumstances was the school to release the child to the parent's custody.[6] At that time, Assistant Principal Gary Jones and others began to secure the exterior doors of the school so that the parents would not be able to enter.[7] Mr. Jones also contacted the School Resource Officer ("SRO") assigned to Live Oak High School, Livingston Parish Sheriff Deputy Chad Dupuy, stating "We have a problem in the front office. You need to come up here to just – so I can

---

[3] ROA.165:1-6.
[4] ROA.166:2-8.
[5] ROA.168, ¶ 4.
[6] ROA.168, ¶ 5.
[7] ROA.168, ¶ 6.

tell you what's going on."[8] By the time Deputy Dupuy arrived at the office, an LPSO dispatcher had informed him that a parent was on their way to the office to file a complaint against a teacher, and that the parent was in a black Chevrolet Tahoe.[9]

By the time Deputy Dupuy arrived at the school office, he was informed by the school administration that DCFS had contacted the school and spoken to the assistant principal, instructing him not to release plaintiff's daughter to either her or her husband.[10] Deputy Dupuy further learned that a DCFS agent was on the way to the school, as well.[11]

Around the same time (but before the front office doors could be locked), plaintiff, Amanda Carter, arrived at the school and walked into the front office while Deputy Dupuy remained outside with her husband, Michael Carter.[12] Mrs. Carter was informed by the office that the school had been directed by DCFS not to release her daughter to her, at which point she became angry, using profanity while yelling in the office.[13] The school secretary instructed plaintiff that she needed to leave the office if she was going to continue using profanity.[14]

---

[8] ROA.168, ¶ 6; ROA.171:7-11.
[9] ROA.172:17-23.
[10] ROA.173:10-22.
[11] ROA.174:6-8.
[12] ROA.169, ¶ 7, ROA.175:8-176:7.
[13] ROA.195:21-196:23;
[14] ROA.169, ¶ 9, 194:13-15.

At one point, plaintiff opened the door to have Mr. Carter come into the office, and at that time, a secretary in the office looked at Deputy Dupuy and said/mouthed "Hey, she has got to go" and "Get her out of here" (i.e., indicating to Deputy Dupuy that he needed to remove Mrs. Carter from the office).[15] At this point, Deputy Dupuy asked Mrs. Carter to step outside.[16] In response, Ms. Carter refused, stating "I'll leave when I have my daughter," and planted her feet in place.[17] Deputy Dupuy then grabbed the sleeve of Ms. Carter's shirt and pulled her towards the door.[18] Ms. Carter "planted her feet down" or braced herself and refused to leave when Deputy Dupuy grabbed her sleeve, but he was able to get her to the door, at which point he pushed her out of the office.[19] Mrs. Carter took one or two steps forward from being pushed out of the office.[20]

Following her removal from the office, plaintiff continued to use profanity towards Deputy Dupuy, at which point he decided to detain her to calm the situation down in front of the school.[21] Mrs. Carter was then placed in Deputy Dupuy's unit

---

[15] ROA.169, ¶ 11; ROA.177:2-178:2.
[16] ROA.169, ¶ 12; ROA.177:15–16.
[17] ROA.185:9-14; ROA.193:12-18.
[18] ROA.169, ¶ 13; ROA.169 ¶ 14. The video of the incident was authenticated by the Declaration of Gary Jones and was uploaded to the JERS for the Middle District of Louisiana on August 22, 2024 and again on February 21, 2025, named "Video of Incident", at 2:55 (the time indicated is the run time on the attached video, rather than the time stamp thereon); ROA.179:14–21.
[19] ROA.169 ¶ 14 (video of incident) at 2:55; ROA.186:13–16; ROA.193:12-18; ROA.179:14-:2.
[20] ROA.181:15-16.
[21] ROA.181:18-182:10.

and was eventually issued a misdemeanor summons and allowed to leave with her daughter after being cleared by the DCFS agent.[22]

Importantly, the entire incident giving rise to plaintiffs' causes of action was captured on video by the school's security camera system. A video of the incident was submitted in connection with defendants-appellants' Motion for Summary Judgment before the trial court.

On February 3, 2023, plaintiffs filed a Complaint with this Honorable Court, asserting claims against Deputy Dupuy, Sheriff Jason Ard, and the Livingston Parish School Board.[23] Plaintiffs then moved to stay the case while their Individuals With Disabilities Education Act claims pled against the school board were mediated.[24] Following a settlement of those claims, plaintiffs filed an Amended Complaint, naming only Deputy Dupuy and Sheriff Ard as defendants.[25]

The Amended Complaint alleges that "a teacher contacted the Department of Child & Family Services ("DCFS") and reported that G.C. was being injured by her mother and adopted father. When Amanda went to pick her daughter up at school one afternoon, she was met with resistance [sic] School Resource Officer ("SRO") Dupuy who would not permit her to enter the school property. He had no legal

---

[22] ROA.186:24–187:4, 188:20-23, 189:25-190:3.
[23] ROA.13-38.
[24] ROA.82
[25] ROA.96-104.

authority to restrain Amanda."[26] The Amended Complaint continues by alleging that "SRO Dupuy grabbed Amanda by the upper right arm, and forcefully shoved her out of the doorway of the school and threatened to arrest her."[27] Based on these factual allegations, plaintiffs alleges that Deputy Dupuy violated Mrs. Carter's rights secured by the Fourth Amendment to the constitution to be free from excessive force and asserts such claims pursuant to 42 U.S.C. § 1983.[28] Plaintiff additionally asserts claims under Louisiana state law against Deputy Dupuy for negligence, assault, and battery with respect to his use of force, and against Sheriff Ard for vicarious liability related to those claims.[29] Thus, the only causes of action pled by plaintiffs against these defendants relate to the use of force and only the use of force.

Following discovery, defendants-appellants moved for summary judgment pursuant to Fed. R. Civ. P. 56.[30] Therein, defendants-appellants urged that the use of force and related claims were barred by qualified immunity. More specifically, through submission of the video of the incident, defendants-appellants showed that the minimal use of force on plaintiff to quell any potential threat she posed did not constitute conduct that was not the type of force which every reasonable officer would consider excessive. That is, defendants-appellants showed that, in response

---

[26] ROA.98, ¶ 10.
[27] ROA.99, ¶ 11.
[28] ROA.100-101, ¶¶17-20.
[29] ROA.101-102, ¶¶21-45.
[30] ROA.141

to the tense and antagonistic encounter with plaintiff, Deputy Dupuy was forced to make a split-second decision to remove plaintiff from the school office and, in so doing, he used the minimal amount of force possible to remove her in response to her resistance. The use of force was by no means excessive.

The trial court erred in denying defendants-appellants' Motion for Summary Judgment. The court engaged in an analysis which the Supreme Court has expressly rejected; namely, examining the encounter with the 20/20 benefit of hindsight without considering the tense and rapidly changing environment fact by the deputy. Moreover, the Court focused exclusively on whether a reasonable jury "could conclude" that the use of force was unreasonable, but lacked any analysis of the second prong of the qualified immunity analysis—whether every reasonable officer would agree that the use of force was excessive. Plaintiffs failed to make such a showing, and the district court failed to engage in such an analysis. The district court likewise erred in declining to dismiss the related state law claims.

In sum, the district court erred by failing to consider that qualified immunity protects all but the plainly incompetent and those who willfully violate the law. The district court failed to consider that officers who act reasonably, even if mistakenly, in the use of force are entitled to immunity. For the reasons more fully discussed below, the district court's order denying defendants-appellants' Motion for Summary Judgment was in error and should be reversed.

# SUMMARY OF THE ARGUMENT

The district court erred by denying defendants-appellants' Motion for Summary Judgment because it improperly relied upon disputes of fact which are not material and it failed to properly employ the qualified immunity analysis. Similarly, the district court erred in failing to dismiss plaintiffs' state law claims.

When a defendant invokes the defense of qualified immunity, the plaintiff "bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." A claim for qualified immunity requires the Court to engage in the well-established two-step analysis developed by the Supreme Court. First, it must determine whether the defendant violated the plaintiff's constitutional rights. If not, the analysis ends. If so, the court must next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions. If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. Stated differently, "[t]he

second step assesses the objective legal reasonableness of the action, that is, whether

every reasonable officer would have known that the conduct in question was illegal."

Here, the only remaining federal law claim asserted against Deputy Dupuy is

for excessive use of force in violation of the Fourth Amendment, brought pursuant

to 42 U.S.C. § 1983. In order to prevail on a claim for use of excessive force under

§ 1983, plaintiffs bear the burden of showing: "(1) an injury, (2) which resulted

directly and only from the use of force that was clearly excessive, and (3) the

excessiveness of which was clearly unreasonable." In the qualified immunity

context, the objective reasonableness of an officer's conduct is a question of law and

not one of fact, and is therefore an appropriate determination for a court to make on

a motion for summary judgment.

The "reasonableness" of a particular use of force must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight. The calculus of reasonableness must embody allowance for the fact that

police officers are often forced to make split-second judgments—in circumstances

that are tense, uncertain, and rapidly evolving—about the amount of force that is

necessary in a particular situation.

Here, Deputy Dupuy was contacted by school administrators and requested to

come to the office because there was a problem. When he arrived, he was informed

that parents were headed to the school to pick up their child, but that DCFS had

called with directions that, under no circumstances, was the school to release the child to the parents. The school was so concerned over this incident that they began to lock their doors.

Once Mrs. Carter arrived at the school office, she was admittedly irate and using profanity. School employees told Mrs. Carter that she would need to leave the office if she continued acting this way. When Mrs. Carter continued this behavior, the school secretary motioned or requested that Deputy Dupuy remove her from the office. Following her refusal to voluntarily leave the office in response to a request by Deputy Dupuy, the deputy grabbed Mrs. Carter's sweater sleeve, at which point she "planted her feet" braced herself, and resisted leaving the office. Once Deputy Dupuy got her to the door, he pushed her outside of the office.[31]

Deputy Dupuy's actions were reasonable in light of the circumstances. His actions were not clearly and objectively excessive or unreasonable. Deputy Dupuy did not use more force than was necessary in the "tense, uncertain, and rapidly evolving" environment presented to him; namely, an unruly mother causing a disturbance in a school office whom DCFS had warned not to release her child to due to an investigation. Deputy Dupuy felt it necessary to remove her from the office while he investigated what was occurring, and he used no more force than was

---

[31] Notably, plaintiffs-appellees has never claimed any injury related to the alleged "push" in the back, to get her fully out of the office.

necessary to accomplish that objective in light of her refusal to voluntarily leave and "planting her feet". Ms. Carter rights were not violated and her § 1983 claims are without merit.

Nevertheless, even if plaintiffs had shown, with competent evidence, that Mrs. Carter's constitutional rights were violated (which they did not do), they surely did not bear their burden of overcoming Deputy Dupuy's invocation of qualified immunity. Deputy Dupuy's use of force in this instance—grabbing Mrs. Carter's sleeve/arm, pulling her towards the door, and pushing her out of the office—was not excessive because it was no more than was necessary to quell the disruption and potential threat she posed. Viewing his use of force objectively, it cannot be said that "every reasonable officer" would know that the use of force at issue was illegal. Indeed, "officers of reasonable competence could disagree as to whether the plaintiff's rights were violated."

Similarly, plaintiffs have not shown that the constitutional question raised here is settled "beyond debate". That is, plaintiffs cannot come forward with any case law—much less any substantial body of law—that would establish that Deputy Dupuy's conduct in grabbing Mrs. Carter's sweater/arm, pulling her to the door, and pushing her out of the office (the least amount of force available to him) violated her right to be free from excessive force when she was being disruptive, using profanity, and posed a potential threat as highlighted by the DCFS agent's instructions not to

release her child to her. The cases cited by the district court are not factually similar to this case and are not sufficient to overcome the immunity.

Further, the factual "disputes" relied upon by the district court are not material to the issue of qualified immunity. Rather, all of the facts supporting the use of force are undisputed and the few "disputes" cited by the district court have no bearing on the reasonableness of the officer's conduct. The district court also failed to properly apply the second prong of the qualified immunity analysis when it failed to consider whether "every reasonable officer" would agree that the use of force in this case was unlawful and failed to find that case law has settled this constitutional question "beyond debate."

In the alternative, defendants-appellants also submit that plaintiffs-appellees failed to carry their burden of proving an essential element of their excessive force claim; namely, an injury. "[A] *de minimis* injury is not cognizable" under § 1983 and bruising and soreness do not rise to the level of "injury" necessary to meet the first elements of an excessive force claim, as such injuries are *de minimis*. Here, plaintiff had "bruising to her upper arm and soreness" which lasted approximately two weeks. Such an injury does not support an excessive force claim.

Finally, defendants-appellants respectfully request that the Court exercise that pendent jurisdiction over the state law claims; namely, the claims of assault and battery against Deputy Dupuy and related vicarious liability claims against Sheriff

Ard, reverse the district court's ruling with respect to those claims, and dismiss them with prejudice. The basis of these claims is the same interaction between Deputy Dupuy and Mrs. Carter; thus, the claims are closely related and, if the federal law claims are dismissed, so too should these claims be.

The district court erred in denying defendants-appellant's Motion for Summary Judgment. Defendants-appellants respectfully request that its Ruling and Order be reversed and that all claims asserted against them be dismissed, with prejudice.

# ARGUMENT

The district court's denial of summary judgment in favor of defendants-appellants was in error. Deputy Dupuy is entitled to qualified immunity with respect to any federal claims asserted against him, and defendants-appellants are entitled to dismissal of any state law claims. Defendants-appellants respectfully request that this Court reverse the ruling of the district court and dismiss all claims asserted against them in this matter.

## I.     Summary Judgment Standard

The standard of review on summary judgment is de novo. *Davidson v. Fairchild Controls Corp.,* 882 F.3d 180, 184 (5th Cir. 2018). Rule 56(a) of the Federal Rules of Civil Procedure sets forth the standard for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

To withstand a properly supported motion, the non-moving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of his claim. *Nat'l Ass'n of Gov't Emp. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698 (5th Cir. 1994) (emphasis added). "Conclusory

allegations unsupported by specific facts . . . will not prevent an award of summary judgment . . ." *Id*. at 713. Similarly, testimony based on conjecture alone is not sufficient to raise a genuine issue of material fact. *Slaughter v. Allstate Ins. Co*., 803 F.2d 857, 860 (5th Cir. 1986). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion; if the evidence is merely colorable or is not significantly probative, summary judgment is appropriate. *Anselmi v. Penrod Drilling Corp.*, 813 F.Supp. 436, 438 (E.D. La. 1993); *Wheeler v. Miller*, 168 F.3d 241, 247 (5th Cir. 1999). Moreover, the court may not, in the absence of any proof, assume that the non-moving party could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Here, defendants-appellants moved for summary judgment on the basis that plaintiffs-appellees were and are unable to carry their burden of proving that Deputy Dupuy is not entitled to qualified immunity with respect to the federal law claims asserted against him. The trial court failed to properly apply the qualified immunity analysis and thereby erred when denying defendants-appellants' motion.

## II.    Summary Judgment Standard When Qualified Immunity is Invoked

The party moving for summary judgment typically bears the burden of establishing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). However, when a defendant invokes the defense of qualified immunity, the plaintiff "bears the burden of

negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). In this case, Deputy Dupuy specifically asserted the defense of qualified immunity.[32] Thus, plaintiffs-appellees bore the burden of negating that defense in opposition to defendants-appellants' motion for summary judgment.

The Supreme Court has developed a framework for analyzing qualified immunity cases where not all disputes of material fact will defeat a summary judgment:

> Where the defendant seeks qualified immunity, a ruling on the issue should be made early in the proceedings…The privilege is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. It follows that the summary judgment standard is less rigid where the defendant pleads qualified immunity.

*Saucier v. Katz*, 533 U.S. 194 (2001) (citations omitted). Applying these principles, the Court determined that denying "summary judgment any time a material issue of fact remains on the excessive force claim could undermine the goal of qualified immunity…" *Id.* at 202. Thus, it was not necessary to resolve all disputes of material fact for the district court to render summary judgment. Indeed, as is discussed in

---

[32] ROA.106, Twelfth Affirmative Defense.

20

more detail below, the factual "disputes" cited by the district court were completely immaterial and had no bearing on the applicability of qualified immunity.

## III.    Law Applicable to 42 U.S.C. § 1983 and Qualified Immunity

Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A claim for qualified immunity requires the Court to engage in the well-established two-step analysis developed by the Supreme Court in *Saucier v. Katz. See Lytle v. Bextar County, Tx.*, 560 F.3d 404, 409–10 (5th Cir. 2009).

This Court, in *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007), set forth the following in the context of a motion for summary judgment based on qualified immunity:

> First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights. If not, our analysis ends. If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions. **If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.**

21

This Court has also recognized the "overlapping objective reasonableness inquiries" required when conducting the qualified immunity analysis in excessive force cases:

> Allegations that an officer used excessive force in conducting a seizure complicates the *Saucier* inquiry. This complexity stems from having to make two "overlapping objective reasonableness inquir[ies]." We must first answer the constitutional violation question by determining whether the officer's conduct met the Fourth Amendment's reasonableness requirement, as discussed below. If we find that the officer's conduct was not reasonable under the Fourth Amendment, we must then answer the qualified immunity question by determining whether the law was sufficiently clear that a reasonable officer would have known that his conduct violated the constitution. In other words, at this second step, we must ask the somewhat convoluted question of whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable. Despite any seeming similarity between these two questions, they are distinct inquiries under *Saucier*, and we must conduct them both.

*Lytle*, 560 F.3d at 410 (citations omitted).

The Supreme Court in *Graham v. Conner*, 490 U.S. 386, 394 (1989), discussed from what perspective a Court should judge the "reasonableness of a particular use of force":

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight....The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

*Id.* at 396–397 (citations omitted). The Supreme Court expounded upon its decision in *Graham* in the context of an excessive force case in *Saucier*. There, the Court

made clear that, although the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness, "that is not enough." 533 U.S. at 201–202 (emphasis added). The Court concluded that there must be more to the inquiry:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted...[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established...If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.

*Id.* (citations omitted) (emphasis added).

In light of these principles, qualified immunity "acknowledge[s] that reasonable mistakes can be made as to the legal constraints on particular police conduct" and that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* at 195. "If the officer's mistake as to what the law requires is reasonable...the officer is entitled to the immunity defense." *Id.* The Court went on to state that "[q]ualified immunity operates… to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Id.* at 206. Citing these principles, the Court confirmed again that, for liability to attach, the law must be so clear that every reasonable officer would know that the conduct was illegal. *Ashcroft*

*v. alKidd*, 563 U.S. 731, 741 (2011). Stated similarly, this Court has explained that

"[t]he second step assesses the objective legal reasonableness of the action, that is,

**whether every reasonable officer would have known that the conduct in**

**question was illegal.**" *Cole v. Carson*, 935 F.3d 444, 462 (5th Cir. 2019), *as revised*

(Aug. 21, 2019) (citations omitted) (emphasis added)

> This Court has also has succinctly summed up these principles as follows:

> We are careful not to engage in second-guessing officers in situations in which they have to make split-second, on-the-scene decisions when confronted with a violent individual. But our qualified immunity inquiry requires us to determine whether the officers' actions were objectively unreasonable, in light of clearly established law at the time, and in light of the information the officers possessed. Qualified immunity thus protects an official whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right of the plaintiff. **Consequently, even law enforcement officials who reasonably but mistakenly use excessive force are entitled to immunity.**

*Wagner v. Bay City, Texas*, 227 F.3d 316 (5th Cir. 2000) (citations omitted)

(emphasis added). Qualified immunity protects "all but the plainly incompetent or

those who knowingly violate the law." *Tolan v. Cotton*, 713 F.3d 299, 304 (5th Cir.

2013).

Finally, the Supreme Court has explained that, for a plaintiff to carry his

burden of proving that every reasonable officer would know that the conduct at issue

violated constitutional rights, they must come forward with prior case law

establishing as much. Indeed, while a plaintiff does not necessarily have to bring

forward a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

Turning to this case, for plaintiffs-appellees to defeat Deputy Dupuy's defense of qualified immunity, they were required to first establish that his conduct violated their constitutional rights. But, even after clearing this hurdle, they were then required to establish that the law was sufficiently clear to put Deputy Dupuy on notice that his conduct violated the constitution and, more importantly, that **no reasonable officer would agree that his conduct was lawful**.

As discussed further below, a review of the undisputed facts of this matter, including the video of the incident, and application of pertinent jurisprudence, demonstrate that Deputy Dupuy's actions did not amount to a constitutional violation. Furthermore, even if there was a constitutional violation, the doctrine of qualified immunity protects Deputy Dupuy from plaintiffs-appellees' §1983 claims, as plaintiffs-appellees can point to no clearly established law prohibiting the specific conduct.

The district court erred when it denied summary judgment by finding that a reasonable jury could conclude that Deputy Dupuy's conduct was excessive. This is a question of law for the court- not the jury-as there are no disputes of fact regarding Deputy Dupuy's use of force. Summary Judgment was appropriate, and the district court's order should be reversed.

**IV.    Defendants-appellants are entitled to qualified immunity on plaintiffs-appellees' federal law claim.**

As set forth above, the only remaining federal law claim asserted against Deputy Dupuy is for excessive use of force in violation of the Fourth Amendment, brought pursuant to 42 U.S.C. § 1983. With respect to this claim, Deputy Dupuy is entitled to qualified immunity.

In order to prevail on a claim for use of excessive force under § 1983, plaintiffs bear the burden of showing: "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).[33] In the qualified immunity context, the objective reasonableness of an officer's conduct is a question of law and not one of fact, and is therefore an appropriate determination for a court to make on a motion for summary judgment. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005).

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham,* 490 U.S. 386 at 396. Indeed, **"[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . violated the Fourth Amendment**." *Id.* (citation omitted) (emphasis added). The calculus of

---

[33] Defendants-appellants will address below the alternative argument that Ms. Carter did not suffer an "injury" sufficient to meet the first element.

reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id.* at 396–97 (emphasis added).

Here, the undisputed facts establish that Deputy Dupuy was contacted by school administrators and requested to come to the office because there was a problem. When he arrived, he was informed that parents were headed to the school to pick up their child, but that DCFS had called with directions that, under no circumstances, was the school to release the child to the parents. The school was so concerned over this incident that they began to lock their doors.

Once Mrs. Carter arrived at the school office, she was admittedly irate and using profanity. School employees told Mrs. Carter that she would need to leave the office if she continued acting this way. When Mrs. Carter continued this behavior, the school secretary motioned or requested that Deputy Dupuy remove her from the office. Following her refusal to voluntarily leave the office in response to a request by Deputy Dupuy, the deputy grabbed Mrs. Carter's sweater sleeve, at which point she "planted her feet" braced herself, and resisted leaving the office. Once Deputy Dupuy got her to the door, he pushed her outside of the office.[34]

---

[34] Notably, plaintiffs-appellees have never claimed any injury related to the alleged "push" in the back, to get her fully out of the office.

**A.    Deputy Dupuy did not use excessive force.**

As set forth above, the qualified immunity analysis requires the Court to first determine whether the plaintiff's constitutional rights were violated and, if so, whether every reasonable law enforcement officer would agree that the conduct violated those rights. To establish that first prong, plaintiffs-appellees were required to prove that Deputy Dupuy's use of force was clearly and objectively excessive. They did not do so.

It is completely undisputed that Deputy Dupuy was asked by school administrators to come to the office because DCFS had contacted the school and spoken to the assistant principal, instructing him not to release Mrs. Carter's daughter to either her or her husband.[35] Deputy Dupuy further learned that a DCFS agent was on the way to the school, as well.[36] So concerned were school administrators of this scenario, they began locking doors to the school office, but Mrs. Carter was able to enter before the front doors were locked.[37] While inside, Mrs. Carter was being unruly and cursing.[38] The school secretary instructed Mrs. Carter that she needed to leave the office if she was going to continue using profanity.[39] Mrs. Carter refused, so school staffed motioned to Deputy Dupuy to

---

[35] ROA.173:10-22.
[36] ROA.173:6-8.
[37] ROA.169, ¶ 7, ROA.175:8-176:7.
[38] ROA.195:21-196:23.
[39] ROA.169, ¶ 9, ROA.194:13-15.

remove her.[40] Deputy Dupuy first asked Mrs. Carter to step outside.[41] In response, Mrs. Carter refused, stating "I'll leave when I have my daughter," and planted her feet in place.[42] Deputy Dupuy then grabbed the sleeve of Mrs. Carter's shirt and pulled her towards the door.[43] Mrs. Carter "planted her feet down" or braced herself and refused to leave when Deputy Dupuy grabbed her sleeve, but he was able to get her to the door, at which point he pushed her out of the office.[44] Mrs. Carter took one or two steps forward from being pushed out of the office.[45]

To be clear, Deputy Dupuy gave Mrs. Carter the chance to walk out of the office on her own without any use of force. She chose not to do so and instead, by her own admission, "planted her feet." As a School Resource Officer, Deputy Dupuy's job responsibilities include ensuring the safety and security of school staff and students. Deputy Depuy was absolutely reasonable in believing that Mrs. Carter posed at least some threat sufficient to have DCFS contact that school and tell them not to release her daughter. The force the deputy used was the minimum amount of force possible to both ensure the safety of those in the school office and give him the chance to investigate the situation with Mrs. Carter outside of the office.

---

[40] ROA.169, ¶ 11; ROA.177:2-40:2.
[41] ROA.169, ¶ 12; ROA.177:15–16.
[42] ROA.185:9-14; ROA.193:12-18.
[43] ROA.169, ¶ 13; ROA.169 ¶ 14. (video of incident) at 2:55 (the time indicated is the run time on the attached video, rather than the time stamp thereon); ROA.179:14–21.
[44] ROA.169 ¶ 14. (video of incident) at 2:55; ROA.186:13–16; ROA.193:12-18; ROA.179:14-43:2.
[45] ROA.181:15-16.

Again, all this can be seen on the submitted video. There is absolutely nothing in the video that is "clearly excessive" or "objectively excessive". Rather, this case presents a Deputy who had limited information but had been told that the state agency responsible for child welfare (DCFS) had instructed the school not to release a child to her parents because they were investigating an incident involving the mother and her child, and now that parent is being unruly and cursing and is refusing requests to leave the school office. Surely Deputy Dupuy was reasonable in believing that Mrs. Carter posed some level of threat to her child or others, given the involvement of DCFS. At this point, Depuy Dupuy could not have known the reason for DCFS's determination, but it can reasonably be inferred that he knew it to be serious and likely child abuse related. Whether it was an investigation into child abuse, threats to the school as a whole, or any other allegations, Deputy Dupuy knew that DCFS considered Ms. Carter a sufficient enough danger that she should not be allowed custody of her child from the school.

Moreover, these facts further support the speed of Deputy Dupuy's actions. The Court is required to evaluate Deputy Dupuy's actions from the perspective of a reasonable officer on the scene, rather than judge with the 20/20 vision of hindsight. *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). Indeed, this presents the exact type of "tense, uncertain, and rapidly evolving" scenario which law enforcement officers are often presented with. Deputy Dupuy was reasonable to assume that Mrs.

Carter posed some threat, given that DCFS warned not to release the child to her. When he asked her to simply step outside the office, she refused. Not only that, she "planted her feet". That is, she admitted to actively resisting Deputy Dupuy by planting her feet and bracing herself when he attempted to escort her out of the office. Deputy Dupuy's use of force was necessitated by her active resistance and was the minimum amount that would be sufficient to remove her from the office. To be sure, Mrs. Carter could have avoided any use of force at all by simply walking outside what asked to do so first by school staff and then by Deputy Dupuy. And she could have avoided further use of force by refraining from actively resisting by planting her feet and bracing herself.

In sum, Deputy Dupuy's actions were reasonable in light of the circumstances. His actions were not clearly and objectively excessive or unreasonable. Deputy Dupuy did not use more force than was necessary in the "tense, uncertain, and rapidly evolving" environment presented to him; namely, an unruly mother causing a disturbance in a school office whom DCFS had warned not to release her child to due to an investigation. Deputy Dupuy felt it necessary to remove her from the office while he investigated what was occurring, and he used no more force than was necessary to accomplish that objective in light of her refusal to voluntarily leave and "planting her feet". Mrs. Carter's rights were not violated and her § 1983 claims are without merit.

### B.     Deputy Dupuy is entitled to qualified immunity.

Nevertheless, even if plaintiffs-appellees had shown, with competent evidence, that Mrs. Carter's constitutional rights were violated (which they did not do), they surely did not bear their burden of overcoming Deputy Dupuy's invocation of qualified immunity. Indeed, this is the exact type of scenario on which qualified immunity is appropriate. Deputy Dupuy was confronted with an uncooperative and irate parent, about whom DCFS had warned that she was not cooperating with them and to not release her child to her. She was acting erratically, using profanity, and the school asked that she be removed from the office. Mrs. Carter refused to leave the office voluntarily and had to be removed by Deputy Dupuy, in response to which she actively resisted him. Again, this is the exact type of scenario in which Deputy Dupuy was forced to make a split-second decision, and for which qualified immunity protects his conduct.

What else was Deputy Dupuy to do in this scenario? Clearly, the school had the right to ask Mrs. Carter to leave and, when she refused, to have Deputy Dupuy remove her. "School officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property." *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999), *citing Carey v. Brown*, 447 U.S. 455, 470-71 (1980) (the Constitution does not leave state officials

powerless to protect the public from threatening conduct that disturbs the tranquility of schools); *Goss v. Lopez*, 419 U.S. 565, 582-83 (1975) (a school official's determination of the existence of an ongoing threat of disruption of the academic process can justify immediately removing a person from school property); *see also Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 283 (5th Cir. 2003) (recognizing a school's legitimate interest in maintaining order and discipline on school grounds). The school administration asked Mrs. Carter to leave, and she refused. They then asked (by motion or otherwise) Deputy Dupuy to remove her, at which point he requested that she step outside.

Again, as a School Resource Office charged with keeping peace and safety at the school, what was Deputy Dupuy supposed to do in this scenario? His choice to grab Mrs. Carter's sleeve/arm and remove her from the office was by no means an unreasonable one. Nor was it in any way excessive, as can be seen on the video.

Indeed, as the video of this incident clearly depicts, Deputy Dupuy's use of force in this instance—grabbing Mrs. Carter's sleeve/arm, pulling her towards the door, and pushing her out of the office—was not excessive because it was no more than was necessary to quell the disruption and potential threat she posed. Viewing his use of force objectively, as the district court was required to do, it cannot be said that "every reasonable officer" would know that the use of force at issue was illegal. While Deputy Dupuy maintains that the use of force was completely justified and

reasonable, at a minimum, "officers of reasonable competence could disagree as to whether the plaintiff's rights were violated." *Freeman*, 483 F.3d at 411. Deputy Dupuy's actions were not that of a "plainly incompetent office" or one who knowingly violated the law. His actions were well within what a reasonable officer under the circumstances would have taken, even if he was mistaken. As the Supreme Court has noted, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . violate[s] the Fourth Amendment." Accordingly, Deputy Dupuy is entitled to qualified immunity.

Similarly, plaintiffs-appellees have not shown that the constitutional question raised here is settled "beyond debate". That is, plaintiffs-appellees cannot come forward with any case law—much less any substantial body of law—that would establish that Deputy Dupuy's conduct in grabbing Mrs. Carter's sweater/arm, pulling her to the door, and pushing her out of the office (the least amount of force available to him) violated her right to be free from excessive force when she was being disruptive, using profanity, and posed a potential threat as highlighted by the DCFS agent's instructions not to release her child to her. Case law from this circuit, or any other for that matter, has not "placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. And surely, not <u>every</u> reasonable officer would agree that the conduct of Deputy Dupuy conduct was excessive. Accordingly,

Deputy Dupuy is entitled to qualified immunity, and all claims asserted against him under § 1983 should have been dismissed.

## V.     The district court erred denying qualified immunity.

In its Order denying defendants-appellants' Motion for Summary Judgment, the district court improperly denied qualified immunity to Deputy Dupuy. More specifically, the few factual "disputes" cited by the district court were completely immaterial to whether Deputy Dupuy is entitled to qualified immunity. More importantly, the district court failed to properly apply the qualified immunity standard.

### A. The district court did not rely on any dispute of material fact to deny summary judgment.[46]

Although the district court cited numerous "disputes" of fact in its Order, none of these disputes were material to the determination of whether Deputy Dupuy should be afforded qualified immunity.

First, the district court noted a conflict between Deputy Dupuy's testimony and the affidavit of Assistant Principal Gary Jones regarding *how* Mr. Jones informed Deputy Dupuy of DCFS's call to the school and instructions not to release the child (i.e., by phone call to Deputy Dupuy or in person when Depuy Dupuy was

---

[46] While this Court lacks jurisdiction to review whether a act is genuinely disputed, this Court has jurisdiction to decide whether those disputes are "material" to the issue of qualified immunity. *See Arizmendi v. Gabbert*, 919 F.3d 891, 896 (5th Cir. 2019).

in the office)[47] But, of course, this conflict is completely immaterial. **To be clear, despite a comment by the Court "that there is a dispute as to what Dupuy was exactly told about the danger Mrs. Carter posed,"[48] this is not correct. There is absolutely no evidence in the record disputing the fact that Mr. Jones told Deputy Dupuy that DCFS called the school and instructed plaintiffs-appellees' daughter not to be released to them.** How that communication occurred is simply irrelevant.

Next, the district court noted a conflict between Mr. Jones' testimony that Mrs. Carter "became increasing[ly] agitated that she was unable to take her child and began to yell and use profanity," and Mrs. Carter's testimony that she was "upset understandably so, and [she] told [her] grandmother [on the phone,] 'They won't give me my fucking daughter'", that she did not see Mr. Jones in the office that day, and that she also said that she did not raise her voice at all in the school office.[49] Thus, the district court found that there were disputes regarding (a) who was in the office; (b) whether Mrs. Carter was yelling; (c) whether she used a single profanity or more; and (2) Mr. Jones has no personal knowledge of what happened while she was in the office.[50] But again, these disputes are not material at all.

---

[47] ROA.565.
[48] ROA.578.
[49] ROA.566-567.
[50] ROA.567.

Whether Mr. Jones was in the office or not has absolutely no bearing on whether Deputy Dupuy used excessive force on Mrs. Carter. Moreover, whether she was "yelling" or otherwise, she admitted to using profanity and that she refused to leave the office. Mr. Jones' testimony is not necessary to establish these facts, as Mrs. Carter readily admitted as much. Deputy Dupuy's use of force was premised on the fact that he believed she posed some threat, as evidenced by DCFS's instructions not to release her child to her, she was being disruptive in the office by admittedly using profanity and refusing to leave, school staff asked for her to be removed, and that she "planted her feet" when Deputy Dupuy tried to remove her from the office. None of this is disputed in any way.

The district court cited no other genuine disputes of fact which would have supported denial of summary judgment. Because these alleged disputes are completely immaterial, especially in light of the video of the incident submitted with the summary judgment motion, the court erred in denying summary judgment in favor of defendants-appellants.

### B. The district court failed to properly employ the qualified immunity analysis.

In its Ruling and Order, the district court largely glossed over the second prong of the qualified immunity analysis. Indeed, the Court dispensed with the qualified immunity analysis in one paragraph of its 37 page Ruling, with virtually no analysis. Instead, the district court simply concluded that, because the *Graham*

factors weighed in Plaintiff's favor, "Dupuy had 'reasonable warning that [his] conduct . . . violated constitutional rights.'"[51]

The Court did not even attempt to engage in any analysis regarding whether "every reasonable officer" in Deputy Dupuy's position would have known that his conduct was unlawful. There is no discussion on plaintiffs-appellees' burden of proving that this constitutional question is settled "beyond debate." Rather, the district court engaged in the exact analysis decried by the Supreme Court—it analyzed the use of force with the benefit of 20/20 hindsight, rather than from the perspective of the deputy on the scene in the "tense, uncertain, and rapidly evolving" situation presented to him.

In finding that Deputy Dupuy had "reasonable warning" that his conduct was unlawful, the Court cited to and discussed *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) and *Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017); yet, neither of these cases presents any similar factual scenario which would show, "beyond debate", that Deputy Dupuy's conduct in this case was unlawful.

Indeed, in *Deville*, the plaintiff was pulled over by law enforcement for speeding while driving her vehicle. *Deville*, 567 F.3d at 161. Deville disputed that she was speeding, saying numerous times that it was "bullshit" and that she had not done anything wrong. *Id*. She also did not comply with the officer's request to exit

---

[51] ROA.58.

her vehicle and instead rolled her window up and called her husband, daughter-in-law, and son. *Id*. When the police chief arrived on the scene, he approached the vehicle and told Deville that she "needed to get the window down or he was going to break it." *Id*. at 162. Deville did not roll her window down, stating that she was waiting for her husband to arrive, at which point the police chief began hitting the window and her car with a black stick and, even though she began to roll down the window, the glass broke before she was able to do so. *Id*. At that point, the police chief grabbed her through the window and opened the door, and the officers pulled her out of the vehicle. *Id.* The officers did not hit her, although they threw her up against the vehicle, resulting in a blow to her abdomen area. *Id*.

In reversing the summary judgment rendered in favor of the law enforcement officers, this Court found that numerous disputes of fact existed. Specifically, the Court found that the amount of negotiation that occurred prior to the use of force was in dispute, that the degree to which the children present were distressed, fearful, and upset was in dispute (bearing on the degree of danger posed by Deville), and whether Deville made comments and took actions which indicated she may flee was in dispute. *Id*. at 168. Given these disputes, the Court concluded that "a jury could reasonably find that the degree of force the officers used in this case was not justifiable under the circumstances." *Id*.

The facts of this case and *Deville* are starkly different. First, the material facts in this case are not in dispute. Second, the potential safety concerns present in this case—the Deputy engaging with a mother whom DCFS had warned not to release her child to, who was now demanding her child with profanity, refusing to leave, and "planting her feet"—far outweighed any safety concerns that Deville posed in her contained vehicle and without any indication she posed a threat. Third, Deputy Dupuy used the minimal amount of force available to him which could have achieved the objective of removing Mrs. Carter from the office while he further investigated the matter, while in Deville, the degree of force used by the officers was by no means the minimum available to them. In sum, it cannot be fairly said that *Deville* would have put Deputy Dupuy on notice that his conduct in this case was unlawful. Surely, reasonable law enforcement officers could disagree on that conclusion, entitled him to qualified immunity.

Similarly, in *Hanks*, the plaintiff was driving his vehicle 20 miles per hour below the speed limit while looking for his cell phone on the side of the road. *Hanks*, 853 F.3d at 741. Law enforcement officers pulled Hanks over and walked to his window. *Id*. at 172. After Hanks could not produce an insurance card, the officer instructed Hanks to "step out of the vehicle and come to the back" after Hanks had become upset and cursed at the officer. *Id*. Hanks did not immediately exit his vehicle and questioned the basis for the officer's instruction. *Id*. The officer repeated

his instruction six times during the approximately 45–second exchange, and Hanks exited the vehicle after Officer Rogers adopted a more assertive tone and added "do it now" to his instruction. *Id*. Once outside of the vehicle, the officer made Hanks put his hands on his car, then on his head, then to get down to his knees, all while facing away from the officer and with the officer's taser drawn. *Id*. Before getting on his knees, Hanks made a small lateral step with his left foot, at which point the officer simultaneously rushed towards him, administering a blow to his upper back or neck (a "half spear"), which caused Hanks to upper body onto his trunk. *Id*.

Reversing summary judgment in favor of the officers, this Court found that there was no evidence that Hanks was a threat to the officer or others and that no reasonable officer would have perceived active resistance or an attempt to flee. Turning to the second prong of qualified immunity, the Court found that "clearly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation."

Again, the facts of *Hanks* do not resolve the issue in this case. Given that it was reported to Deputy Dupuy that DCFS instructed that Mrs. Carter's child should not be released to her, as well has her active resistance in "planting her feet" and

bracing herself after having been asked at least twice to leave the office, Deputy Dupuy was reasonable in engaging *minimal* force to remove her from the office. Indeed, this is not like *Hanks* where "overwhelming" force was used that was clearly unnecessary. In this case, Deputy Dupuy used the *minimum* amount of force necessary to remove Mrs. Carter from the office in light of the request by the school secretary, and so that he could investigate the call be DCFS and whether Mrs. Carter should be allowed to leave with her child. Just as with *Deville*, *Hanks* does not place the statutory question presented in this case "beyond debate".

Indeed, as the Supreme Court has instructed, "while a plaintiff does not necessarily have to bring forward a case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Ashcroft*, 563 U.S. at 741. Neither plaintiffs-appellees, not the district court, have pointed to case law which settles the issue presented here "beyond debate". That is, neither plaintiffs-appellees nor the district court rely on case law that demonstrates that when a School Resource Officer (Deputy Dupuy), who is charged with safety and security at a school, is presented with a parent whom (1) DCFS has instructed should not be permitted to have her child due to an investigation; (2) who is cursing at school officials to release her child, (3) who, at least twice has been asked to exit the office, (4) the school has requested the deputy to remove her from the office, and (5) who has "planted her feet" and braced herself, that such an officer is not permitted

to grab the shirt/arm of the parent and pull her out of the office. Indeed, there is no case law which instructs such a deputy that this minimal amount of force is unlawful. Accordingly, Deputy Dupuy is entitled to qualified immunity.

## VI.    Plaintiffs-appellees failed to prove she suffered an "injury".

Defendants-appellants respectfully submit that this appeal is easily decided on the argument set forth above—that Deputy Dupuy is entitled to qualified immunity and that the district court erred in denying him that immunity. However, in the event the court declines to reverse the district court's ruling on this issue, defendants-appellants alternatively submit that plaintiffs-appellees failed to carry their burden of proving an essential element of her excessive force claim; namely, an injury.

Whether an injury is cognizable and whether the use of force is objectively reasonable are inextricably linked questions. *Flores v. City of Palacios*, 381 F.3d 391, 398, n. 6 (5th Cit. 2004). "[T]he amount of injury necessary to satisfy our requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances." *Id*., *quoting Ikerd v. Blair*, 101 F.3d 430, 434–35 (5th Cir. 1996) (citations omitted). The definition of a cognizable injury, therefore, changes with the facts of each case. *Id,* citing *Williams v. Bramer*, 80 F.3d 699, 704 (5th Cir. 1999) (holding that choking the plaintiff was a cognizable injury when it served no

legitimate purpose but that it was not a cognizable injury when it was incident to a search of the plaintiff's mouth for drugs).

Again, in this case, defendants-appellants have established that some use of force was permissible under the circumstances. Mrs. Carter has testified that, as a result of the use of force in this case, she has "bruising to her upper arm and soreness" which lasted approximately two weeks [52] "[A] *de minimis* injury is not cognizable" under § 1983. *Sam v. Richard*, 887 F.3d 710, 712 (5th Cir. 2018). Courts have consistently held that, assuming some use of force was warranted, bruising and soreness do not rise to the level of "injury" necessary to meet the first elements of an excessive force claim, as such injuries are *de minimis*. *See e.g., Glenn v. City of Taylor*, 242 F.3d 307, 314 (5th Cir. 2001) (holding that plaintiff could not demonstrate that she had suffered an "injury" where the plaintiff merely experienced swollen wrists after the arresting officer placed handcuffs on her too tightly); *Winston v. City of Shreveport*, No. CIV. A. 08-111, 2009 WL 3584486, at *6 (W.D. La. Oct. 28, 2009), *aff'd*, 390 F. App'x 379 (5th Cir. 2010) (finding that bruising to the plaintiff's left hip and forearm were *de minimis* injuries insufficient to meet the "injury" element of an excessive force claim); *Houston–Hines v. Houston Indep.*

---

[52] ROA.190:9; ROA.192:14–16. Mrs. Carter also had some bruising and soreness to her wrist from the handcuffs, but does not know if that was caused by her own decision to remove the handcuffs from her wrists forcibly or because she hit it on the door when she was removed from the office. *See* ROA.191:16–20. Either way, such injury would still be *de minimis.*

*Sch. Dist.*, No. 04–3539, 2006 WL 870459, *5 (S.D. Tex. April 5, 2006) (finding that scratches, bruises, and soreness for about one week after the incident are nothing more than de minimis injuries and are not enough to raise a genuine issue of material fact to support the first element of an excessive force claim).

For the reasons discussed above, at least some level of force was permitted to be used against Mrs. Carter to remove her from the school office. The school had the right to ask her to leave and to ask Deputy Dupuy to remove her when she refused. Depuy Dupuy asked multiple times for her to voluntarily leave, in response to which she refused and cursed at him. He then used the least amount of force possible to remove her from the office. Under the circumstances, the minimal bruising she received is nothing more than *de minimis* and does not meet the "injury" element of her cause of action. Accordingly, the claims should have been dismissed and the district court erred in failing to do so.

VI.    **This Court should exercise pendent jurisdiction over plaintiffs-appellees' state law claims and likewise dismisses these, as well.**

Finally, this Court has the discretionary authority under the collateral order doctrine to exercise pendent appellate jurisdiction over plaintiffs-appellees' state law claims and dismiss these claims, as well. Indeed, "in the interest of judicial economy, [[the Court] may have discretion to exercise pendent appellate jurisdiction to review other claims at the same time." *McKay v. LaCroix*, 117 F.4th 741, 745 (5th Cir. 2024), *citing Morin v. Caire,* 77 F.3d 116, 119 (5th Cir. 1996). This Court has

previously held that it is appropriate to exercise such jurisdiction over state law claims which are interconnected with federal law claims subject to a defense of qualified immunity, "for if [the Court] were to refuse to exercise jurisdiction over the state law claims, [the] refusal would defeat the principal purpose of allowing an appeal of immunity issues before a government employee is forced to go to trial." *Morin*, 77 F.3d at 119-120.

Here, defendants-appellants respectfully request that the Court exercise that pendent jurisdiction over the state law claims; namely, the claims of assault and battery against Deputy Dupuy and related vicarious liability claims against Sheriff Ard, reverse the district court's ruling with respect to those claims, and dismiss them with prejudice. The basis of these claims is the same interaction between Deputy Dupuy and Mrs. Carter; thus, the claims are closely related.

A battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact," *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987), while "[a]n assault is the imminent threat of a battery." *Bulot v. Intracoastal Tubular Services, Inc.*, 98-2105 (La. App. 4th Cir. 2/24/99), 730 So.2d 1012. "In a suit for damages resulting from an intentional tort, the claimant must carry the burden of proving all *prima facie* elements of the tort, including the lack of consent to the invasive conduct." *Landry v. Bellanger*, 2002-1443 (La. 5/20/03), 851 So.2d 943, 954.

However, Louisiana law provides that a law enforcement officer's use of force to subdue or detain an individual will be considered legitimate police function, and will not be deemed a "battery" as long as the officer uses "reasonable force" under the circumstances. *Ross v. Sheriff of Lafourche Parish*, 479 So.2d 506, 511 (La. App. 1st Cir. 1985); *Penn v. St. Tammany Parish Sheriff's Office*, 2002-0893 (La. App. 1st Cir. 4/2/03), 843 So. 2d 1157, 1161. "Under ordinary circumstances the use of reasonable force to restrain an arrestee shields a police officer from liability for battery." *Id.* Indeed, La. Code Cr. P. art. 220 permits the use of reasonable force during an arrest, and the law precludes claims unless the force used was "clearly inappropriate". *Robertson v. Hessler*, 2008-1212 (La. App. 4 Cir. 6/3/09), 13 So. 3d 1214, 1226.

Thus, the question when considering Mrs. Carter's battery claim is not whether Deputy Dupuy made a harmful or offensive contact with her, but whether the force used by Deputy Dupuy was "reasonable" under the circumstances or "clearly inappropriate." This is the exact standard that is used to evaluate Deputy Dupuy's conduct for the claims asserted under federal law, and as is clearly demonstrated in the discussion regarding those claims, Deputy Dupuy's use of force was reasonable and justified.

For similar reasons, any claims asserted against Sheriff Ard should be dismissed. The only claims remaining against Sheriff Ard are for his vicarious

liability for the state law claims asserted against Deputy Dupuy.[53] Should the court agree that any underlying torts alleged against Deputy Dupuy should be dismissed, then there can be no vicarious liability for Sheriff Ard. *See Courville on Behalf of Vincent v. City of Lake Charles*, 98-73 (La. App. 3 Cir. 10/28/98), 720 So. 2d 789, 800. ("Because we affirm the finding of no negligence on the part of the LCPD officers, the claim of vicarious liability against the City must fall."). Similarly, any claims for failing to screen or train Deputy Duputy must be dismissed if the Court dismisses the underlying torts asserted against the Deputy. *See Morgan v. Richard*, 2019-835 (La. App. 3 Cir. 10/28/20), 305 So. 3d 932, 936 (Finding that the ability to recover on a claim for negligent training and supervision is contingent upon a successful claim against the employee officer for false arrest and use of excessive force). Accordingly, should the Court agree that Deputy Dupuy acted reasonably in this case, they respectfully request that all state law claims asserted against them also be dismissed.

## CONCLUSION

The district court erred by denying qualified immunity to Deputy Dupuy with respect to the claims of excessive force asserted pursuant to 42 U.S.C. § 1983. The district court improperly relied on disputes of fact that were not material and failed

---

[53] The district court dismissed any independent liability claims against Sheriff Ard. *See* ROA.595-596.

to properly apply the qualified immunity analysis. The district similarly erred by failing to dismiss the state law claims asserted against Deputy Dupuy and Sheriff Ard.

Defendants-appellants respectfully request that this Court reverse the Ruling and Order issued by the district court denying their Motion for Summary Judgment and dismiss all claims asserted against them, with prejudice.

SUBMITTED BY:

Livingston Parish Sheriff's Office
20300 Government Boulevard
Livingston, LA 70754
T: 225-435-1375
E: dgremillion@lpso.org

*/s/ Druit George Gremillion, Jr.*
Druit G. Gremillion, Jr (LSBA # 33867)

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the Original Brief of Defendants–Appellants, Jason Ard and Chad Dupuy, were filed through the Fifth Circuit Court of Appeals electronic filing system on June 18, 2025 and service on counsel for Plaintiffs-Appellees, Amanda Carter and Michael Carter, was automatically accomplished the same day through the notice of electronic filing.

*/s/ Druit G. Gremillion, Jr.*
Druit G. Gremillion, Jr.

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 11,034 words.

*/s/ Druit G. Gremillion, Jr.*
Druit G. Gremillion, Jr.